IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETER B.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

Civ. No. 6:18-cv-00657-MC

OPINION AND ORDER

MCSHANE, Judge:

       Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for social security disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

       On December 15, 2014, Plaintiff filed an application for benefits, alleging disability as of September 5, 2013. After a hearing, the administrative law judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act. Tr. 26.[2] Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony, in rejecting the treating medical source opinion of Dr. Kaiser, and in declining to admit certain evidence submitted after the hearing. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Plaintiff alleged an onset date of September 5, 2013, and quit his work as a valet parking attendant at that time due to back problems, motion sickness, and "getting sick all the time." Tr. 90-91; Tr. 122 (noting Plaintiff last worked as a parking attendant on August 31, 2013). Plaintiff stated, "I was having problems with vision, standing, even just moving, I was getting motion sickness all the time." Tr. 90. Plaintiff testified that after standing for an hour, his pain is an eight or nine (on a ten-point scale). Tr. 93. Plaintiff's back pain requires him to lie down for two or three hours each day. Tr. 94. Plaintiff alleges he can walk for two blocks before needing to sit down. Tr. 97.

The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine patellofemoral syndrome, chronic obstructive pulmonary disease, and asthma. Tr. 17. At step 4, the ALJ determined that Plaintiff:

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can perform frequent stooping, crouching, and climbing of ramps and stairs and occasional balancing, kneeling, and crawling. The claimant cannot climb ladders, ropes, or scaffolds. He can tolerate no more than occasional exposure to concentrated airborne irritants.

Tr. 19.

As noted, Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony as to his limitations, in rejecting the treating opinion of Dr. Kaiser, and in declining to admit certain evidence submitted after the hearing into the record. I address each argument in turn.

1. **The ALJ's Adverse Credibility Determination**

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597,

3 – OPINION AND ORDER

603 (9th Cir.1989)). Still, the ALJ must provide "specific, clear and convincing reasons" to discredit subjective symptoms testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). In formulating these reasons, the ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ in this case supported her credibility determination with references to several of the above factors:

> The objective medical evidence when considered as a whole does not support the claimant's allegations that he has been unable to work because of his physical impairments. The record indicates that the claimant is alleging disability as of September 5, 2013. However, there is no evidence of significant treatment for several months both before and after his alleged onset date that would shed light on why he stopped working in September 2013.
>
> On May 3, 2013, four months before the claimant's alleged onset date, the claimant was seen South Hill Family Clinic because he wanted paperwork so he could use a cane at work. The claimant said he had started using a cane because of balance issues since he had been feeling unsteady on his feet and shaky. He denied any difficulty performing the activities of his job and noted he could walk from the valet desk to the parking lot without trouble. Further, he was walking a mile to work each day without trouble. . . . The claimant's spine and extremities were grossly normal, and the claimant could ambulate independently. The examining physician recommended the claimant see a neurologist to rule out the onset of Parkinson's disease. There is no evidence the claimant followed up with a neurologist.
>
> There is no evidence the claimant had any further treatment prior to his alleged onset date, September 5, 2013. Further the claimant had no treatment for approximately six months after his alleged onset date. The claimant's lack of treatment for months both before and after his alleged onset date is inconsistent

with his allegations at the hearing that he stopped working in September 2013 due to getting sick all the time, back pain, and problems with his vision. One would expect that if an individual were getting sick all the time, or of a frequency that it impacted one's ability to work, the individual would make an appointment with his primary care physician. Similarly, if the individual were having vision deficits so severe they affected work, one would expect them to seek treatment for those vision problems. The claimant's failure to do so suggests that the claimant was not getting sick all the time, did not have disabling back pain, and did not have vision problems of a severity that warranted treatment. This undermines the reliability of the claimant's allegations regarding his alleged onset date.

* * * *

The objective medical evidence is also inconsistent with the severity of symptoms reported by the claimant during the hearing. The claimant said he has severe lower back pain and that after an hour of standing his back pain rises to an 8 or 9 on a scale of to 10. He said he then has to lie down and does so for two to three hours a day. However, objectively, imaging has only shown mild degenerative changes in the spine, which do not appear consistent with the claimant's allegations. Physical examinations have shown some tenderness and loss of range of motion, but no neurological deficits were noted in examinations until after the claimant's hearing, at which point some deficits of sensation were noted in the lower extremities. Similarly, while the claimant alleged hip pain and knee pain, his x-rays were unremarkable and showed no disorders that would explain his symptoms. There is also no evidence of any treatment for vision deficits. Finally, the claimant's COPD and asthma have been well controlled with the use of medication.

The claimant's medical treatment reveals relatively infrequent trips to the doctor for the alleged disabling symptoms, and the claimant has received only routine or conservative treatment, which is generally not the type of medical treatment one would expect for a totally disabled individual. For example, the claimant has had two brief course[s] of physical therapy for his allegedly disabling back pain. There is no evidence he has had injections in the spine or been recommended for surgery. He has not been treated in the emergency room or hospitalized for back pain. He has not used narcotic medications, a tens unit, chiropractic treatment, acupuncture or massage. This appears inconsistent with his allegations of disabling back pain.

Similarly, the claimant has had no treatment for knee pain or hip pain. He has not been treated for his allegedly disabling tremor or dizziness in more than two years, and he did not go to a neurologist despite this referral being recommended by his primary care provider. While he alleged he has to use a cane due to dizziness and unsteadiness on his feet, the medical record shows that a cane was never recommended by a medical provider and the claimant has no difficulty ambulating without a cane. Further, in May 2013, the claimant said that despite

> his use of a cane he could walk up to a mile. Again, this evidence appears inconsistent with the claimant's allegations of disabling symptoms.
>
> There are large gaps in treatment in the record of more than a year at a time. During the hearing, the claimant reported that he sees his primary care provider about once a year. The progress notes show no treatment between May 2013 and April 2014, almost a year. There was no treatment between July 18, 2014 and December 8, 2015, more than a year. Further, the claimant had no treatment for six months between March 4, 2016 and September 2, 2016. The claimant's lack of treatment for up to a year at [a] time supports a conclusion that his symptoms did not cause disabling limitations in functioning.

Tr. 21–23. (internal citations omitted).

The ALJ's reasoning above is supported by substantial evidence in the record. Despite alleging disability as of September 2013, Plaintiff did not see a doctor from May 2013 until April 2014. In May 2013, four months before his alleged onset date, Plaintiff reported no problems performing his job duties, and reported walking "a mile to work each day without trouble." Tr. 400. This contrasts with Plaintiff's testimony that he quit his valet job because he "was having problems with vision, standing, even just moving, I was getting motion sickness all the time." Tr. 90.

Plaintiff next saw a doctor over six months after his alleged onset date, when he presented not with back pain, but for alcohol withdrawal. Tr. 364. In fact, Plaintiff first sought treatment for back pain during a consultative examination in June 2015, about a year and a half after the alleged onset date. Tr 15, 17. The physical exam at that time revealed mild tenderness to palpation and decreased range of motion with flexion and extension. Tr 17. The x-rays from June 2015 were consistent with the physical examination, showing mild degenerative changes. The next time Plaintiff mentioned back pain was six months later to his treating physician. Tr. 540. At that time, Plaintiff complained of midline lower back pain with no sciatica. Tr. 540. The absence of any allegation of back pain until over one year after the alleged onset date, and the

large gaps in the medical record around the alleged onset date, are inconsistent with Plaintiff's testimony that he quit his work as a valet parking attendant at that time due to back problems, motion sickness, and "getting sick all the time." Tr. 90-91. An unexplained failure to seek treatment, in contrast to allegations of debilitating symptoms or limitations, is a clear and convincing reason for finding a Plaintiff less-than fully credible.[3] *Ghanim*, 763 F.3d at 1163.

Additionally, although Plaintiff testified that standing for an hour results in extreme pain, causing Plaintiff to lie down for several hours throughout the day, the record consists solely of conservative treatment for Plaintiff's back pain. As noted by the ALJ, Plaintiff was treated with only two short rounds of physical therapy. Tr. 17, 22. Additionally, Plaintiff testified he managed his back pain with Ibuprofen and Tylenol. Tr. 92. The treatment record contrasts with Plaintiff's allegations of debilitating pain and the ability to walk for only two blocks before needing to rest. An ALJ may point to a conservative treatment plan as evidence suggesting a lower level of pain and fewer limitations than alleged. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

As noted, the ALJ "may consider a wide range of factors in assessing credibility." *Ghanim*, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). Here, the ALJ pointed to the relatively extensive gaps in treatment when compared to Plaintiff's alleged limitations, and the conservative treatment Plaintiff received. These clear and convincing reasons for finding Plaintiff less-than fully credible are supported by substantial evidence in the record.

2. **The ALJ's Rejection of Dr. Kaiser's Opinion**

In July 2017, treating physician Dr. Kaiser assessed Plaintiff's condition. The ALJ summarized Dr. Kaiser's opinion:

---

[3] As noted by the ALJ, in addition to the large gaps in treatment near the alleged onset date, Plaintiff also failed to seek treatment from July 2014 to December 2015, and again from March 2016 through September 2016. Tr. 23. These gaps are inconsistent with Plaintiff's allegations of severe limitations.

> He stated that due to the claimant's impairments, the claimant would need to rest by lying down one to two hours during the workday. . . . Dr. Kaiser estimated the claimant can only walk for two blocks before having significant pain or needing to rest. He stated the claimant can stand and walk for only four hours during an eight hour workday at 15-minute intervals and can only sit for four hours in an eight-hour workday. Dr. Kaiser reported the claimant needs a job that permits frequency shifting of position at will. Dr. Kaiser stated that the claimant needs breaks of 20 to 30 minutes every two to four hours. He opined the claimant could only lift 10 pounds. Dr. Kaiser further stated that the claimant can only reach with his arms for 50 percent of the time. He opined the claimant would miss more than for days per month.

Tr. 24 (internal citations omitted).

The ALJ gave minimal weight to Dr. Kaiser's opinion, finding the opinion was based largely on Plaintiff's subjective reports, in conflict with Dr. Kaiser's own treatment notes, and inconsistent with the medical record as a whole. Tr. 24.

Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion and a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). However, when faced with conflicting medical evidence, the ALJ is charged with resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating doctor's opinion conflicts with those of examining or reviewing doctors, an ALJ "may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir.1999)).

The ALJ's determination that Dr. Keiser based his opinion on Plaintiff's self-reporting is supported by substantial evidence in the record. The only objective medical evidence Dr. Kaiser pointed to in support of his opinion is a June 2015 x-ray which revealed only mild degenerative changes in Plaintiff's spine. Tr. 562. The ALJ also noted that Dr. Kaiser's treatment notes stood in stark contrast to the limitations he suggested in July 2017. Tr. 24 (noting that at a December 2016 appointment, "no mention was made of back pain, particularly not the level of back pain assessed by Dr. Kaiser in his examination."). Additionally, Dr. Kaiser's opinion that Plaintiff can walk two blocks, sit 15 minutes, stand for one hour at a time, Tr. 563, perfectly match the subjective portion of Dr. Kaiser's treatment notes from July 2017, Tr. 68. The ALJ reasonably inferred that Dr. Kaiser based his opinion on Plaintiff's subjective reports. Given the ALJ's adverse credibility finding, the conservative treatment Dr. Kaiser prescribed (i.e., two brief stints of physical therapy and over-the-counter medication), and the x-rays Dr. Kaiser relied on showing "mild degenerative disc disease," the ALJ did not err in giving little weight to Dr. Kaiser's opinion. *Tommasetti*, 533 F.3d at 1041.

### 3. Post-Hearing Evidence

Plaintiff argues the ALJ erred in declining to admit into the record evidence Plaintiff presented after the hearing. Specifically, Plaintiff refers to chart notes and imaging from September and October of 2017. At the August 2017 hearing, Plaintiff requested that a consultation he had two days after the hearing be submitted into the record. Tr. 110. The ALJ agreed to include anything received from that consultation so long as she had yet to issue her decision. The ALJ admitted notes from that consultation into the record. However, the ALJ

declined to admit chart notes and imaging presented one and two months after the hearing. Tr. 14–15.

Plaintiff argues the ALJ must admit any potentially relevant evidence obtained post-hearing into the record. The Court disagrees. Under the regulations, claimants are required to submit or inform the ALJ about any relevant evidence at least five days before the hearing. 20 C.F.R. § 404.935(a). Plaintiff concedes that he failed to inform the ALJ of the evidence within five days of the hearing, but argues it should be admitted because the MRI was not scheduled at the time of the hearing and he therefore had no way of informing the ALJ of the to-be-scheduled MRI on the date of the hearing. In declining to admit the evidence, the ALJ pointed to 20 C.F.R. § 404.935(b), which contains the lone exceptions for evidence coming in less-than 5 days before the hearing. Tr. 14. The regulation states the ALJ "may decline to consider or admit the evidence" if the claimant failed to submit the evidence (or inform the ALJ about the evidence) at least five days before the hearing unless:

> (1) [the administration's] action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend relative, or other person;
>>
>> (ii) There was a death or serious illness in your immediate family;
>>
>> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
>>
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less-than 5 business days prior to the hearing.

20 C.F.R. §§ 404.935(b) (2017).

Plaintiff filed the application for benefits in December 2014. Tr. 14. Plaintiff's hearing took place over nearly three years later, on August 15, 2017. Plaintiff failed to present any argument to the ALJ, and fails to advance any argument here, that he or his doctor requested an MRI at any point between December 2014 and August 2017. Abandoning any attempt at an argument under the relevant regulation, Plaintiff instead argues that 20 C.F.R. § 404.935 applies only to evidence that existed prior to the hearing. Plaintiff points to 20 C.F.R. §§ 404.1512(a), which requires claimants to "disclose any additional evidence about which [they] become aware." *Id.*

However, the claimant's ongoing duty to disclose relevant evidence does not silently create a duty for the ALJ to admit such evidence after the hearing. The ALJ's duty to consider evidence submitted after the hearing is outlined in 20 C.F.R. § 404.935(b). As Plaintiff never advanced any argument that he met any exception contained in 20 C.F.R. § 404.935(b), the Court cannot conclude the ALJ erred in finding Plaintiff did not meet any of the exceptions. *See* Tr. 15 (noting "the representative did not allege[] any attempts to obtain the new evidence prior to the hearing.").

But even if the ALJ did err in excluding the evidence, any error is harmless. Neither the chart notes nor the imaging submitted after the hearing reveal anything inconsistent with the fully developed medical record the ALJ used in her decision. The "mild neural foraminal narrowing" and "small, broad-based disc protrusion" of the October 2017 images are consistent with the mild degenerative symptoms documented in the June 2015 x-ray. While there was "foraminal narrowing which may affect the left L4 nerve root," Tr. 81, the July 2015 x-ray indicating "mild degenerative changes of the

lumbar spine" including findings of "disc space narrowing osteophyte formation seen throughout the lumbar spine," Tr. 76.

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 19th day of September, 2019.

       /s/ Michael J. McShane    
Michael McShane
United States District Judge